```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                   :
JACK FERRANTI,                     :
                                   :
        Plaintiff,                 :   Civ. No. 14-3331 (NLH)
                                   :
    v.                             :   OPINION
                                   :
JOSEPH DIXON,                      :
                                   :
        Defendant.                 :
_____:

APPEARANCES:
Jack Ferranti, #45299-053
FCI Allenwood-Low
P.O. Box 1000
White Deer, PA 17887
    Plaintiff Pro se

Kristin Lynn Vassallo
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
    Counsel for Defendant


HILLMAN, District Judge

    Plaintiff Jack Ferranti, an inmate currently confined at Federal Correction Institution ("FCI") Allenwood in White Deer, Pennsylvania filed his Complaint on May 27, 2014 alleging claims under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (ECF No. 1). Since that time, several items have been filed on the docket which the Court now addresses. Specifically, an entry of default has been entered against Defendant Joseph

Dixon. Also pending are two motions: Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 20); and Plaintiff's Motion for Default Judgment (ECF No. 22). For the reasons set forth below, the Court will vacate the entry of default, deny the pending motions, permit the Complaint to proceed, and require Defendant to file an appropriate responsive pleading.

## I.   PROCEDURAL HISTORY

As set forth above, Plaintiff filed this civil action, asserting claims under Bivens[1] on May 27, 2014. (ECF No. 1). Because Plaintiff paid the filing fee, summons issued. (ECF No. 6). On October 24, 2014, the Court received a letter from Plaintiff requesting an extension in time because he was having difficulty serving the summons. (ECF No. 7). The Court received a second letter from Plaintiff on October 27, 2014 in which Plaintiff requested assistance from the Court in serving his

---

[1] Although Plaintiff does not expressly state that he brings his claims pursuant to Bivens, paragraph one of his Complaint states, "[this is an action to redress the violation of Plaintiff's rights under the Constitution of the United States. And the laws of the United States." (Compl. 1, ECF No. 1). Because Plaintiff has alleged a constitutional violation by federal officials, the Court will presume that his claims are filed under Bivens. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001) (holding that in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.").

2

summons. (ECF No. 8).  The Court issued an Order on March 9, 2015 and ordered the United States Marshal Service to serve the summons, with the cost of such service to be paid by Plaintiff. (ECF No. 11).  Summons issued and were returned executed. (ECF Nos. 15, 16, 17).

On August 20, 2015, the Court received a request for entry of default against Defendant Joseph Dixon. (ECF No. 18).  As a result, the Clerk of the Court entered default.  On August 21, 2015, the Court received a letter from counsel for Defendant which cited to Federal Rule of Civil Procedure 12(a)(3). (ECF No. 19).  Specifically, counsel for Defendant alleged that Defendant's time to respond to the Complaint had not yet run because Defendant must respond "within 60 days after service on the officer or employee or service on the United States attorney, whichever is later." FED. R. CIV. P. 12(a)(3). Accordingly, counsel asserted that the deadline for a response to the Complaint was September 8, 2015 and counsel requested that the entry of default against Defendant be removed from the docket. (ECF No. 19).

On September 1, 2015, Defendant filed a Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 20), which remains pending.  On September 4, 2015, the Court received a letter from Plaintiff in which he expressed his belief that Defendant Joseph Dixon's time to respond to the Complaint

3

expired on August 3, 2015. (ECF No. 21). Accordingly, Plaintiff requested that the entry of default remain on the docket. Plaintiff also questioned why the United States Attorney's Office was not served until 35 days after Defendant Joseph Dixon had been served, and asked whether service on the United States Attorney's Office was effectuated by electronic filing. (Id.). On September 23, 2015, Plaintiff filed a formal Motion for Default Judgment as to Defendant Joseph Dixon. (ECF No. 22).

The Court will address each of these filings below.

## II. DISCUSSION

### A. The Complaint

As an initial matter, although Plaintiff paid the filing fee in this case, the Complaint is still subject to sua sponte screening by the Court. See 28 U.S.C. 1915A (requiring the Court to review a complaint in a civil action filed by prisoner against an employee of a governmental entity). As this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit pursuant to 28 U.S.C. § 1915A.

In his Complaint, Plaintiff asserts that a Unit Counselor at FCI Fort Dix, Joseph Dixon, inquired about Plaintiff's participation in the Bureau of Prison's ("BOP") Financial

4

Responsibility Program ("FRP"). Plaintiff informed Unit Counselor Dixon (hereinafter "Defendant") that he "had a court ordered stay as to the fine imposed in his case" which Plaintiff contends that other federal institutions had honored. (Compl. 2, ECF No. 1). Defendant placed Plaintiff on FRP Refusal Status and instructed an officer at the Receiving and Discharge Department to send Plaintiff's "hobby craft material" to Plaintiff's son's home address. Plaintiff contends that there is no provision which calls for removal of a prisoner from participation in a hobby craft program when said prisoner is on FRP Refusal Status.

   Plaintiff concedes that one of the restrictions which can be imposed as a result of a prisoner's RFP Refusal Status is being assigned the lowest housing status. (Compl. 3, ECF No. 1). Plaintiff states that Defendant asked Plaintiff to show him paperwork proving Plaintiff had a "bottom bunk pass." Plaintiff did, in fact, have bottom bunk passes from two other federal institutions where he had been incarcerated and Plaintiff was assigned a bottom bunk upon his arrival to FCI Fort Dix. Defendant instructed Plaintiff to "go to the Medical Department and renew his bottom bunk pass by July 15, 2012." (Id.). Defendant further informed Plaintiff that, if he did not have a renewed bottom bunk pass by July 15, Defendant would move Plaintiff to a top bunk.

5

Plaintiff states that on July 13, 2012, he went to the Medical Department to renew his bottom bunk pass. However, he was informed that he would need an appointment to see a doctor before he could renew his pass. Plaintiff then visited Defendant's supervisor, Unit Manager Whritenour, to discuss the situation. It is unclear from the Complaint what was the result of this discussion.

On July 15, 2012, Plaintiff was unable to produce a renewed bottom bunk pass and Defendant indicated that he intended to move Plaintiff to a top bunk. Plaintiff told Defendant that he didn't see the need for reassignment given that there were two vacant lower bunks in his living quarters. Plaintiff states that Defendant became "loud and verbally abusive" at this point so Plaintiff walked out of Defendant's office and returned to his living quarters.

Plaintiff contends that Defendant followed Plaintiff to his living quarters and continued to yell at Plaintiff. Plaintiff further contends that Defendant "crowded Plaintiff against his locker" and eventually instructed all other inmates in the room to get out. Defendant called for backup before pushing Plaintiff backwards, bending him over a locker, and holding him by his right arm. Another officer then grabbed Plaintiff and handcuffed him.

Plaintiff complained that Defendant had hurt his back. Plaintiff was taken to the Medical Department where abrasions were found on his back. Plaintiff states that bruising was still present ten days later.

As a result of this series of events, Plaintiff was "taken to the Special Housing Unit and given an incident report for (1) Assaulting any person; (2) refusing to obey an order and (3) Insolence toward a staff member." (Compl. 6, ECF No. 1).

Plaintiff asserts two causes of action. First, he states that Defendant violated 18 C.F.R. § 545.11 when he ordered that Plaintiff's hobby craft material be mailed to Plaintiff's son. Next, Plaintiff asserts a claim against Defendant for excessive force. Plaintiff seeks nominal damages in the amount of $1.00 and punitive damages in the amount of $50,000. Plaintiff asks the Court to declare Defendant's actions in violation of 18 C.F.R. § 545.11, and he seeks attorneys' fees and costs.

Having reviewed the Complaint, the Court determines that dismissal of Plaintiff's claims 28 U.S.C. § 1915A is not warranted at this time. Accordingly, pursuant to 42 U.S.C. § 1997e(g)(2), and as discussed below, Defendant shall be required to respond to the Complaint.

B. <u>Entry of Default</u>

As explained above, an entry of default was entered against Defendant Joseph Dixon. For the reasons set forth below, the entry of default will be vacated.

Plaintiff filed suit against Joseph Dixon in his individual capacity. Because Defendant Joseph Dixon is an employee of the government, service upon him is guided by Federal Rule of Civil Procedure 4(i)(3). Rule 4(i)(3) requires that a plaintiff suing a federal employee in his individual capacity also serve the United States. Service upon the United States is accomplished by delivering a copy of the summons and the complaint by certified mail to: (1) the civil-process clerk at the United States Attorney's Office for the district in which the action was brought, and (2) the Attorney General of the United States in Washington, D.C. <u>See</u> F<small>ED</small>. R. C<small>IV</small>. P. 4(i)(1); <u>Mathies v. Silver</u>, 450 F. App'x 219, 221 (3d Cir. 2011).

Here, the summons as to Defendant Joseph Dixon was returned executed on June 2, 2015 (ECF No. 15); the summons as to the Attorney General was returned executed on June 8, 2015 (ECF No. 16); and the summons as to the United States Attorney's Office was returned executed on July 7, 2015 (ECF No. 17).

After service of a complaint, responsive pleadings are governed by Rule 12. As counsel for Defendant points out, when a federal employee is sued in an individual capacity, a

8

responsive pleading must be served "within 60 days after service on the officer or employee or service on the United States attorney, whichever is later." FED. R. CIV. P. 12(a)(3) (emphasis added). Because the United States Attorney's Office in this case was served on July 7, 2015 (ECF No. 17), their responsive pleading was not due until September 8, 2015.[2] Thus, the entry of default on August 20, 2015 against Defendant Joseph Dixon was premature and will be vacated.

### C. Motion for Default Judgment (ECF No. 22)

As explained above, Defendant's responsive pleading was not due until September 8, 2015. Therefore, the entry of default against Defendant Joseph Dixon on August 20, 2015 was improper and will be vacated. As a corollary, Plaintiff's Motion for Default Judgment (ECF No. 22) will be DENIED.

### D. Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 20)

In lieu of filing an Answer, Defendant has filed "hybrid motion" which counsel describes as a motion to dismiss pursuant to Rule 12(b)(6) or, in the alternative, a motion for summary

---

[2] The 60 day period initially results in a deadline of Sunday, September 6, 2015. The following day, Monday, September 7, 2015, was a federal holiday. However, pursuant to FED. R. CIV. P. 6(a)(1)(C), "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Therefore, the proper deadline for Defendant's response in this case was Tuesday, September 8, 2015.

9

judgment. However, it is apparent from Defendant's brief (ECF No. 20-5) that a substantive ruling on the motion necessitates consideration of matters outside the pleadings and, thus, requires conversion of the motion to a motion for summary judgment. See FED. R. CIV. P. 12(d).

Given that the Third Circuit has emphasized the importance of notice requirements in the context of converting a motion to dismiss into a motion for summary judgment, particularly when a plaintiff is a pro se prisoner, see Renchenski v. Williams, 622 F.3d 315 (3d Cir. 2010), this Court is concerned with the adequacy of the notice provided to Plaintiff in this case.

Moreover, this Court has reservations concerning the appropriateness of such "hybrid motions" in general. A court in this district has discussed this issue and succinctly expressed its disfavor for motions of this type:

> Rule 12 authorizes and requires one pleading in response to a complaint, i.e., an answer. See FED. R. CIV. P. 12(a)(1)(A) ("A defendant must serve an answer: (i) within 21 days after being served with the summons and complaint; or (ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent"); see also FED. R. CIV. P. 7(a)(2). Rule 12(b), (e) and (f) require certain motions to be made "before" filing an answer. Rule 12(b) provides that "[a] motion asserting any of the [ ] defenses [specified in Rule 12(b)(1)-(6) ] must be made before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Rule 12(e) requires a motion for a more definite statement to "be made before filing a responsive pleading," and Rule 12(f)(2) requires defendant to move to strike redundant, immaterial, impertinent, or scandalous

10

matter "before responding to the pleading." FED. R. CIV. P. 12(e) and (f)(2).

The language of Rule 12(g) inhibits the joinder of motions with a Rule 12 motion. See FED. R. CIV. P. 12(g)(1) ("A motion under this rule may be joined with any other motion allowed by this rule"). Rule 12(d) permits a district court to convert a motion under Rule 12(b)(6) or 12(c) to a summary judgment motion under limited circumstances and after notice to the non-moving party. See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b) (6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion"). But, as will be explained, Rule 12 does not authorize a motion for summary judgment or a motion to dismiss and for summary judgment, as made in this case, to be filed in lieu of an answer.

Rule 56 authorizes a party to file a summary judgment motion at any time until 30 days after the close of discovery, see FED. R. CIV. P. 56(b), provided the motion identifies each claim, or part of each claim, on which summary judgment is sought. See FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought").

Compliance with the notice requirements and joinder limitations of Rules 12 and 56 is particularly important where the plaintiff is a pro se prisoner. See Renchenski v. Williams, 622 F.3d 315, 340–41 (3d Cir. 2010). In Renchenski, the Third Circuit instructed "State and Federal Governments, as well as our district courts, [to] work together to ensure pro se prisoner-plaintiffs receive adequate notice of an imminent motion for summary judgment." Renchenski, 622 F.3d at 340–41. To this end, Renchenski requires the following notice for pro se prisoners whenever the court converts a Rule 12(b)(6) motion to a Rule 56 motion:

> We agree with the majority of our sister circuits that adequate notice in the pro se prisoner context

11

> includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit.

Renchenski, 622 F.3d at 340 (footnote omitted).

The Renchenski Court cited several decisions of sister circuits with approval, including Lewis v. Faulkner, 689 F.2d 100, 101 (7th Cir. 1982). In Lewis v. Faulkner, the district court dismissed a pro se prisoner's civil rights complaint where, instead of filing an answer, defendants filed "something called 'Motion To Dismiss, Or In The Alternative, For Summary Judgment.'" Lewis, 689 F.2d at 101. The Seventh Circuit reversed the district court's order of dismissal on the ground that "a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond with affidavits" to a hybrid motion to dismiss or for summary judgment. Id. at 102. As the Seventh Circuit explained:

> The lack of explicit notice would not be troubling if it were obvious to a layman that when his opponent files a motion for summary judgment supported by affidavits he must file his own affidavits contradicting his opponent's if he wants to preserve factual issues for trial. But this aspect of federal civil practice is contrary to lay intuition, which is that the first step in a civil litigation is the filing of a complaint, the second the filing of an answer, and the third the trial of the case. The defendants here filed no answer. Their first pleading was the motion. It would not be realistic to impute to a prison inmate ... an instinctual awareness that the purpose of a motion for summary judgment is to head off a full-scale trial by conducting a trial in miniature, on affidavits, so that not submitting counter affidavits is the equivalent of not presenting any evidence at trial. We credit the plaintiff with knowing that if his case was tried and he failed to present evidence he would lose.... But we do not think he can be charged with the further knowledge that a failure to offer affidavits when his opponent files something called "Motion to Dismiss, Or In The

> Alternative, For Summary Judgment" is an equivalent default.
>
> Lewis, 689 F.2d at 101.
>
> In this case, without having filed an answer, a hybrid motion like the one filed here, does not comply with the above described requirements of Rules 12 and 56 or satisfy the Renchenski court's directive to provide clear notice to pro se prisoners regarding what they must do to avoid losing a summary judgment motion. Cf. Woods v. Carey, 684 F.3d 934 (9th Cir. 2012) (specifying contents of notice and holding that notice must be provided at the time the summary judgment motion is made); Bryant v. Madigan, 91 F.3d 994 (7th Cir. 1996) (finding notice provided confusing and inadequate). It follows from Renchenski and Rule 12 that a defendant should avoid filing a hybrid motion to dismiss and/or for summary judgment of the sort filed here, which creates unnecessary confusion for a pro se litigant. Instead, as required by Rule 12, a defendant must file either an answer or a motion under Rule 12(b), (e), or (f)(2), within the time limits set forth in Rule 12(a)(1)(A).

Visintine v. Zickefoose, No. 11-4678, 2012 WL 6691783, at *1-3 (D.N.J. Dec. 21, 2012).

This Court finds the analysis in Visintine, and the cases cited therein, to be persuasive. See also Fuller v. FCI Manchester Health Serv., No. 12-7025, 2015 WL 5032058 (D.N.J. Aug. 24, 2015) (dismissing hybrid motion); Mazariegos v. Monmouth Cnty. Corr. Inst., No. 12-5626, 2014 WL 1266659, at *5 (D.N.J. Mar. 25, 2014) ("a defendant should avoid filing a hybrid motion to dismiss that does not comply with the governing rules, and which creates unnecessary confusion for a pro se litigant"); Laboy v. Ontario Cnty., N.Y., 56 F. Supp. 3d 255, 260 (W.D.N.Y. 2014) (same) (collecting cases); Rivera-Santiago

v. Abbott Pharm. PR, Ltd., 608 F. Supp. 2d 216, 223 (D.P.R. 2008) (prohibiting hybrid motions to "avoid the confusion and delay associated with a 'hybrid motion to dismiss and/or summary judgment.'").

Accordingly, this Court finds that Defendant's motion in this case is unnecessarily confusing, procedurally improper, and inconsistent with the reasoning of Renchenski.  For these reasons, the Court will deny Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 20).  This denial is without prejudice to Defendant refiling his motions as separate, procedurally appropriate, filings.

### E. Responsive Pleading

As set forth above, the Court determines that dismissal of the Complaint is not warranted under 28 U.S.C. § 1915A at this time.  Further, the Court has denied Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment.  Accordingly, Defendant will be required to submit a procedurally appropriate responsive pleading no later than October 26, 2015.

### III. CONCLUSION

For the foregoing reasons, the entry of default against Defendant Joseph Dixon will be vacated and Plaintiff's Motion for Default Judgment (ECF No. 22) is denied.  Likewise, Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment (ECF No. 20) is denied without prejudice.

Defendant is free to refile his motions as separate, procedurally appropriate, filings.  The Complaint will not be dismissed as a result of the Court's sua sponte screening and Defendant will be required to submit a procedurally appropriate responsive pleading no later than October 26, 2015.

    An appropriate Order will be entered.

                                    ___s/ Noel L. Hillman_____
                                    NOEL L. HILLMAN
                                    United States District Judge

Dated: October 6, 2015
At Camden, New Jersey