UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
JACK FERRANTI,                      :
                                    :
        Plaintiff,                  :   Civ. No. 14-3331 (NLH)
                                    :
    v.                              :   OPINION
                                    :
JOSEPH DIXON,                       :
                                    :
        Defendant.                  :
_____:

APPEARANCES:
Jack Ferranti, #45299-053
FCI Allenwood-Low
P.O. Box 1000
White Deer, PA 17887
    Plaintiff Pro se

HILLMAN, District Judge

    Plaintiff Jack Ferranti ("Plaintiff"), an inmate currently confined at Federal Correctional Institution ("FCI") Allenwood in White Deer, Pennsylvania, filed his Complaint (ECF No. 1) on May 27, 2014 alleging claims under Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and paid the filing fee.

    On October 26, 2015, Defendant Joseph Dixon ("Defendant") filed a motion to dismiss. (ECF No. 25.) On or about February 4, 2016, Plaintiff filed his opposition (ECF No. 31) to Defendant's motion, and also filed a motion to amend the Complaint (ECF No. 32). Defendant then filed a response to

Plaintiff's motion to amend. (ECF No. 33.) In a July 7, 2016 Opinion and Order, the Court denied Plaintiff's motion to amend and granted Defendant's motion to dismiss. (ECF Nos. 34-35.) However, the Court granted Plaintiff leave to file an amended complaint, which he did on August 3, 2016. (ECF No. 36.)

At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

I.  **BACKGROUND**

In its July Opinion and Order, the Court summarized the factual allegations of the original Complaint as follows:

> In his Complaint, Plaintiff asserts that a Unit Counselor at FCI Fort Dix, Joseph Dixon, inquired about Plaintiff's participation in the Bureau of Prison's ("BOP") Inmate Financial Responsibility Program ("IFRP"). Plaintiff informed Unit Counselor Dixon that he "had a court ordered stay as to the fine imposed in his case" which Plaintiff contends that other federal institutions had honored. Defendant placed Plaintiff on IFRP Refusal Status and instructed an officer at the Receiving and Discharge Department to send Plaintiff's "hobby craft material" to Plaintiff's son's home address. Plaintiff contends that there is no provision in the BOP's regulations which calls for removal of a prisoner from participation in a hobby craft

2

program when said prisoner is on IFRP Refusal Status.

Plaintiff concedes that one of the restrictions which can be imposed as a result of a prisoner's IRFP Refusal Status is being assigned the lowest housing status. Plaintiff states that Defendant asked Plaintiff to show him paperwork proving Plaintiff had a "bottom bunk pass." Plaintiff previously had bottom bunk passes from two other federal institutions where he had been incarcerated and Plaintiff was assigned a bottom bunk upon his arrival to FCI Fort Dix. Defendant instructed Plaintiff to "go to the Medical Department and renew his bottom bunk pass by July 15, 2012." Defendant further informed Plaintiff that, if he did not have a renewed bottom bunk pass by July 15, 2012, Defendant would move Plaintiff to a top bunk.

Plaintiff states that on July 13, 2012, he went to the Medical Department to renew his bottom bunk pass. However, he was informed that he would need an appointment to see a doctor before he could renew his pass. Plaintiff then visited Defendant's supervisor, Unit Manager Whritenour, to discuss the situation. It is unclear from the Complaint what the result of this discussion was.

On July 15, 2012, Plaintiff was unable to produce a renewed bottom bunk pass and, as a result, Defendant indicated that he intended to move Plaintiff to a top bunk. Plaintiff told Defendant that he didn't see the need for reassignment given that there were two vacant lower bunks in his living quarters. Plaintiff states that Defendant became "loud and verbally abusive" at this point, so Plaintiff walked out of Defendant's office and returned to his living quarters.

Plaintiff contends that Defendant followed Plaintiff to his living quarters and continued to yell at Plaintiff. Plaintiff further

3

> contends that Defendant demanded to see Plaintiff's identification card, "crowded Plaintiff against his locker," and eventually instructed all other inmates in the room to get out.  Defendant called for backup before pushing Plaintiff backwards, bending him over a locker, and holding him by his right arm. Another officer then grabbed Plaintiff and handcuffed him.
>
> Plaintiff complained that Defendant had hurt his back.  Plaintiff was taken to the Medical Department where abrasions were found on his back.  Plaintiff states that bruising was still present ten days later.
>
> As a result of this series of events, Plaintiff was "taken to the Special Housing Unit and given an incident report for (1) Assaulting any person; (2) refusing to obey an order and (3) Insolence toward a staff member."

(July 7, 2016 Opinion 2-4, ECF No. 34.)

The Court found that Plaintiff alleged two claims: (1) Defendant violated 28 C.F.R. § 545.112 when he ordered that Plaintiff's hobby craft material be mailed to Plaintiff's son; and (2) Defendant used excessive force.  After dismissing the claims regarding 28 C.F.R. § 545.112,[1] the Court found that Plaintiff had alleged only de minimus force and such an allegation was insufficient to state an Eighth Amendment claim for excessive force under relevant case law.  (Id. at 20.)

---

[1] The Court will not review its holding regarding the IFRP because Plaintiff raises only an excessive force claim in his Amended Complaint.

4

As permitted by the Court's Opinion and Order, Plaintiff then filed an Amended Complaint. (ECF No. 36.) He also filed a supporting memorandum of law; his medical records; his affidavit; and the affidavits of other inmates. (Id.)

## II. DISCUSSION

### A. Legal Standard

### 1. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding in forma pauperis, see 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, see 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to sua sponte dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915A because Plaintiff is a prisoner.

According to the Supreme Court's decision in Ashcroft v. Iqbal, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

5

v. Twombly, 550 U.S. 544, 555 (2007)). To survive sua sponte screening for failure to state a claim[2], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. Fowler v. UPMS Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting Iqbal, 556 U.S. at 678). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

**2. Bivens Action**

In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." Schreane v. Seana, 506 F. App'x 120, 122 (3d Cir. 2012) (citing Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)); Mitchell v. Beard, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); Courteau v. United States, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

6

authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988)).  Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004). Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

**B. Analysis**

As this Court stated in its previous Opinion, the Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  When reviewing Eighth Amendment excessive force claims,

7

courts must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  Whether the force applied was excessive requires the examination of several factors including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

Although the extent of an inmate's injury is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." Id. at 104.  Thus, the inquiry must focus on the extent of the force and the circumstances in which it is applied, not on the resulting injuries. Id. at 108; see also Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002).  However, the Eighth Amendment does not protect against a de minimis use of physical force, so long as it "is not of a sort 'repugnant to the conscience of mankind.'" Brooks, 204 F.3d at 107 (quoting Hudson, 503 U.S. at 9-10).

8

In his Amended Complaint, Plaintiff does not allege any additional facts which change the Court's previous conclusion that Plaintiff has not stated an excessive force claim. The Amended Complaint is virtually identical to the original Complaint, with only minor, non-substantive additions. The accompanying memorandum of law similarly does not contain any new facts, only legal conclusions. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) (In reviewing the sufficiency of a complaint under Rule 12(b)(6), "we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."). The only "new" information provided by Plaintiff are affidavits from fellow prisoners, none of whom witnessed the incident between Plaintiff and Defendant. Instead, two of the prisoners simply detail the version of the incident relayed to them by Plaintiff and the third prisoner details previous incidents he has had with Defendant Dixon. (Am. Compl., Ex. D-F, ECF No. 36-3.) None of these affidavits or the minor additions to the factual allegations have any impact on the Court's prior determination that Plaintiff has not stated a constitutional violation.

In short, for all of the reasons discussed in this Court's July 7th Opinion and Order, Plaintiff's excessive force claim must be dismissed.

9

**III. CONCLUSION**

For the foregoing reasons, the Amended Complaint will be dismissed in its entirety.  Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915A] should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).  Here, Plaintiff has had two opportunities to provide facts which would support an excessive force claim.  Both times Plaintiff has alleged almost identical facts which clearly do not state such a claim.  As such, any further amendment would be futile.  Id.

An appropriate Order follows.


Dated: February 21, 2017         s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN
                                 United States District Judge